Pansy M. ICKES, Appellant–Plaintiff,

v.

Gregory K. WATERS, Esq.,
Appellee–Defendant.

No. 90A02–0703–CV–287.

Court of Appeals of Indiana.

May 27, 2008.

Nathan S.J. Williams, John S. Bloom, Shambaugh, Kast, Beck & Williams, LLP, Fort Wayne, IN, for Attorneys for Appellant.

Jeffrey L. Hansford, Curtis P. Moutardier, Boehr, Stopher & Graves, LLP, New Albany, IN, for Attorney for Appellee.

## OPINION ON REHEARING

MAY, Judge.

Pansy M. Ickes petitions for rehearing of our opinion in *Ickes v. Waters,* 879 N.E.2d 1105 (Ind.Ct.App.2008). We grant her petition for the limited purpose of clarifying a factual misstatement in our previous opinion, and we reaffirm our original decision.

Pansy brought a malpractice suit against Gregory K. Waters, an attorney who prepared an estate plan for her and her husband, Raymond Ickes. We affirmed summary judgment for Waters, holding Pansy's claim was time-barred.

Waters advised the Ickeses to place their assets in a trust that would be

---

amendable and revocable by Raymond and would become irrevocable on his death. Raymond's children from a previous marriage, Jerry and Diana, would become trustees after Raymond's death. Pansy and Raymond assented to Waters' proposal.

After the trust was executed and funded, Jerry told Pansy he did not think a stepmother should receive anything. Our opinion described amendments Raymond made in response:

> When Pansy told Raymond about that, he amended the trust to ensure Pansy would receive at least $1000 a month and removed Jerry Ickes as a successor trustee. Richard Paxson, an investment advisor with Edward Jones, made the amendment for Raymond. Neither Raymond nor Pansy contacted Waters about the amendment.

*Id.* at 1107. Pansy notes that portion of the opinion is not accurate. In her deposition, Pansy testified they took their concerns to Paxson, who in turn contacted Waters. (Appellant's App. at 234.) Waters acknowledges he made the amendments. (Response to Petition for Reh'g at 4.)

This fact, however, does not alter our previous decision. Whether Paxson or Waters made the amendments, Pansy demonstrated she knew she did not control the trust assets when she asked Raymond to amend the trust. *Ickes,* 879 N.E.2d at 1109.

Pansy contends it is relevant that Waters made the amendments:

> Waters represented Pansy and Raymond jointly. Waters continued to represent Raymond, who was Pansy's husband, and a co-settlor and trustee of the Ickes Family Revocable Trust. Given the fact that Waters had represented both Pansy and Raymond, that Waters's representation of Raymond clearly continued, and that Waters had done nothing to terminate the relationship with Pansy, it is reasonable to infer that Pansy could have subjectively believed that there was still an attorney-client relationship between her and Waters.

(Petition for Reh'g at 8.) Pansy made no such argument on appeal, and her own testimony undermines this argument. She testified she and Raymond took their concerns about the trust to Paxson rather than Waters. When asked why, she stated:

A. To be real honest, I don't think [Raymond] liked [Waters].

\* \* \* \* \*

Q. Okay. Did Raymond ever express any doubts in the quality of Mr. Waters' work or anything like that?

A. (Pause) . . . Well, yeah.

Q. Okay, what'd he say?

A. Oh, we got another lawyer—we got another lawyer in Blackford County, and he said he was another [D.W.],—

Q. All right.

A. —and that meant he wasn't too good.

(Appellant's App. at 240–41.)

That Waters made the amendments has no affect on our previous decision, which we reaffirm.

DARDEN, J., and CRONE, J., concur.